1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE DISTRICT OF ARIZONA**

8

9    Josephine Havey,                          No. CV-22-00242-TUC-SHR

10              Plaintiff,                      **Order Granting Motion for Conditional**
                                               **Certification**
11   v.

12   Countertop Factory Southwest LLC,

13              Defendant.

14

15

16        Pending before the Court is Plaintiff Josephine Havey's "Motion for Conditional

17   Certification, for Approval and Distribution of Notice and for Disclosure of Contact

18   Information" ("Motion"). (Docs. 17, 18.)  Defendant Countertop Factory Southwest LLC

19   ("Countertop") filed a response in opposition (Doc. 24) and Plaintiff filed a reply.  (Doc.

20   25.)  For the following reasons, the Court grants in part and denies in part the Motion.

21        **I.      Background**

22        The following facts are derived from Plaintiff's First Amended Complaint ("FAC").

23   (Doc. 14.)  Countertop is a domestic limited liability company in the business of producing

24   and distributing countertops.  (*Id.* ¶¶ 7, 9, 11.)   According to its website, Countertop

25   conducts business in Arizona and has offices in Tucson and Phoenix.  (*Id.* ¶¶ 7–11.)

26        Plaintiff was employed by Countertop as a Project Manager from May 2021 through

27   March 2022.  (Doc. 14 ¶ 14.)  Plaintiff was an "Hourly-Commission Employee" who

28   earned both an hourly wage and commissions based on sales.  (*Id.* ¶ 16.)  Plaintiff and other

1    Hourly-Commission Employees "regularly or occasionally worked over forty hours per
2    week throughout their tenure with Defendant" but were not properly paid for their
3    overtime, and were required to take 30-minute to one-hour unpaid lunch breaks, during
4    which they were "regularly required to answer their phones, respond to requests from
5    Defendant and customers, and continue regular work duties." (*Id.* ¶¶ 17–24.)  Plaintiff
6    further alleges Defendant did not include the commissions that she and "other Hourly-
7    Commission Employees earned in their regular rate when calculating their overtime pay."
8    (*Id.* ¶ 21.)  Based on these facts, Plaintiff alleges two claims:  (1) an individual claim for
9    violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq*, based on
10   Defendant's failure to pay her 1.5x her regular rate for all hours worked in excess of 40
11   hours per week; and (2) a collective action claim for violation of the FLSA based on
12   Defendant's failure to pay other similarly situated employees 1.5x their regular rate for all
13   hours worked in excess of 40 hours per week.  (Doc. ¶¶ 41–65.)

14        In her FAC, Plaintiff seeks declaratory judgment, certification of a collective under
15   Section 216 of the FLSA of all similarly situated individuals, as well as monetary damages,
16   liquidated damages, and reasonable attorney's fees and costs.  (Doc. 14 ¶¶ 1–2.)

17        On July 28, 2022, a former Countertop employee, Gabriel Guerra, "opted in" as a
18   plaintiff.  (Docs. 16, 23.)  The next day, Plaintiff filed her pending Motion.  (Doc. 14.)
19   About one month later, another former Countertop employee, Eddie Butieriez III, opted in
20   as a plaintiff.  (Doc. 23.)

21        **II.    Plaintiff's Motion for Conditional Certification**

22        Plaintiff asks the Court to conditionally certify the following collective: "All hourly
23   employees who were paid any commissions since May 23, 2019, who made sales during
24   the weeks in which they worked more than 40 hours." (Doc. 17 ¶ 3.)  Plaintiff also requests
25   90 days to distribute the Notice and file Consent to Join forms.  (*Id.* ¶ 9.)  In support of her
26   Motion, Plaintiff filed her Declaration (Doc. 17-6) and Brief in Support of her Motion
27   (Doc. 18).[1]   First, Plaintiff argues the Court should conditionally certify the proposed
28

              [1]Plaintiff also filed a proposed "Notice of Right to Join Lawsuit" (Doc. 17-1),

1    collective action for notice purposes because she has met the "lenient burden to show that

2    the potential class members are similarly situated," required at the notice stage of an FLSA

3    case.  (Doc. 18 at 6–8.)  Specifically, she points to the facts established in her own

4    declaration which show she and the proposed collective members were all subject to the

5    same pay practices which she alleges violate the FLSA.  (*Id.*)  Plaintiff also asserts it is

6    improper for the Court to make credibility determinations, resolve contradictory evidence,

7    or make legal findings at this stage of the certification process.  (*Id.* at 2–8.)  Second,

8    Plaintiff argues the Court should approve her proposed collective action notice and consent

9    forms, grant her leave to send potential class members notice via mail and email, and order

10   Defendant to provide Plaintiff with the contact information for those potential class

11   members. (Doc. 18 at 8.)  Plaintiff also requests 90 days to distribute and file opt-in notices.

12   (*Id.* at 13–14.)

13        Defendant opposes Plaintiff's Motion and argues Plaintiff has failed to establish

14   potential class members exist because, "[a]side from her own 'belief' that there may be

15   other potential class members, Plaintiff has not offered a single declaration or affidavit

16   from the individuals she claimed to work with every day, let alone potential plaintiffs at

17   [Defendant]'s other Arizona location" and "has no evidence of *anyone* who was similarly

18   situated to her."  (Doc. 24 at 2–3 (emphasis in original).)  Although Defendant concedes

19   Plaintiff need not submit a large number of affidavits or declarations to show the existence

20   of potential class members, Defendant asserts her single declaration is insufficient because

21   courts "generally require at least a handful of declarations."  (*Id.* at 4–5 (internal quotation

22   omitted).)    Further, Defendant asserts conditional certification is inappropriate because

23   "individualized inquiries will be required to determine whether employees have standing

24   to bring FLSA claims."  (*Id.* at 9.)  Lastly, Defendant contends the 90-day opt-in period

25   Plaintiff requests is excessive and the Court should limit the opt-in period to no more than

26   _____

27   proposed "Consent to Join Collective Action" form (Doc. 17-2), proposed "Text of
     Electronic Transmission" to be used for email (Doc. 17-3), proposed Reminder

28   Postcard/Second Notice of Right to Join Lawsuit (Doc. 17-4), and Declaration of Attorney
     Josh Sanford (Doc. 17-5).

- 3 -

1    60 days.  (*Id.* at 10–11.)

2    In her Reply, Plaintiff argues the motion for certification should be granted because

3    "it is the quality of Plaintiff's declaration, not the quantity, that determines whether

4    conditional certification is appropriate."  (Doc. 25 at 2–3.)  She further argues Defendant

5    "is demanding a level of proof not required at the certification stage," her declaration is

6    sufficient to support conditional certification, and the claims are not too individualized to

7    proceed collectively.  (*Id.* at 5–8.)  Plaintiff maintains a 90-day opt-in period "better serves

8    the broad remedial goals of the FLSA," and Defendant "has shown no reason why 60 days

9    is better."  (*Id.* at 9.)

10    ### III.    Legal Standard

11    Under the FLSA, a covered employer shall not employ any employee "for a

12    workweek longer than forty hours unless such employee receives compensation for his

13    employment in excess of the hours above specified at a rate not less than one and one-half

14    times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employer who

15    violates § 207 "shall be liable to the employee or employees affected in the amount of

16    their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated

17    damages."  29 U.S.C. § 216(b).  And, "any one or more employees for and in behalf of

18    himself or themselves and other employees similarly situated" can bring a collective action

19    against an employer for alleged violations of the FLSA.  *Id.*   The district court has

20    discretion to determine whether a collective action is appropriate and, in the Ninth Circuit,

21    courts use a two-step approach.  *Stanfield v. Lasalle Corr. W., LLC*, No. CV-21-01535-

22    PHX-DJH, 2022 WL 2967711, at *2 (D. Ariz. July 26, 2022).  "Under the first step, the

23    court makes a notice stage determination of whether plaintiffs are 'similarly situated.'"  *Id.*

24    (internal citation omitted).  The plaintiff bears the burden of showing she is similarly

25    situated to the rest of the proposed class, which "requires nothing more than substantial

26    allegations that the putative class members were together the victims of a single decision,

27    policy, or plan."  *Id.* (internal citation omitted).  The standard for the initial certification

28    determination is lenient because of the lack of evidence accessible at the pleading stage,

1    and the court's determination at this first step is based "primarily on the pleadings and any

2    affidavits submitted by the parties." *Id.* (internal citations omitted). "If a plaintiff

3    establishes she is similarly situated to the proposed class, the district court will

4    conditionally certify the proposed class and the lawsuit will proceed to a period of

5    notification, which will permit potential class members to opt into the lawsuit." *Id.*

6    (internal citation omitted). At the second step, the party opposing certification may move

7    to decertify the class after discovery. *Id.*

8          While the burden to establish the plaintiffs are similarly situated is light, the court

9    may not "function as a rubber stamp for any and all claims" brought under the FLSA.

10   *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 929-30 (D. Ariz. 2010). Rather, the plaintiff

11   must show a factual or legal nexus binding the proposed class members' claims. *Lopez v.*

12   *PT Noodles Holdings Inc.*, No. CV-20-00493-PHX-JJT, 2021 WL 2576912, at *4 (D. Ariz.

13   Jan. 12, 2021) (quoting *Wertheim v. Ariz.*, No. CIV 92-453-PHX-RCB, 1993 WL 603552,

14   at *1 (D. Ariz. Sept. 30, 1993)). Put differently, the plaintiffs must be materially alike in

15   some aspect of the litigation, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th

16   Cir. 2018), and the Court must be satisfied a reasonable basis exists for the plaintiffs'

17   claims, *Scales v. Info. Strategy Design Inc.*, 356 F. Supp. 3d 881, 885–86 (D. Ariz. 2018).

18   Although, as a matter of best practices, plaintiffs should seek declarations from other

19   potential class members, the Ninth Circuit "has not established a bright line rule that

20   conditional class certification motions must be supported by multiple declarations.

21   Quality, not quantity, controls." *Scales*, 356 F. Supp. 3d at 886. Therefore, additional

22   declarations are unnecessary where "the named plaintiff's declaration adequately supports

23   [her] allegations." *Id.* at 887.

24         Courts have found declarations to be higher quality when they include specific,

25   personal experiences with similarly situated employees rather than vague allegations.

26   *Compare Stanfield*, 2022 WL 2967711, at *3 (declaration alleging plaintiff discussed pay

27   with five other named employees and a uniform payroll policy was sufficient for

28   conditional certification), *with Colson*, 687 F. Supp. 2d at 928 (declaration referencing

1   discussions with "unidentified" coworkers, "unspecified" company communications, and

2   "undocumented" employee interactions was insufficient for conditional certification).

3       **IV.   Discussion**

4           A. <u>Tucson Hourly-Commission Employees</u>

5           Plaintiff argues the Court should certify the collective action because she has

6   sufficiently shown she is similarly situated to other Hourly-Commission Employees.  (Doc.

7   18 at 2–7.)  In her FAC, Plaintiff alleges she and other Hourly-Commission Employees

8   were regularly required to work during their lunch break without compensation, and

9   Defendant "did not include the commissions that Plaintiff and other Hourly-Commission

10  Employees earned in their regular rate when calculating their overtime pay."  (Doc. 14

11  ¶¶ 21, 24.)  According to Plaintiff, Defendant's pay practices were "similar or the same for

12  all Hourly-Commission Employees" and those pay practices were the same at all of

13  Defendant's facilities because the policy was a centralized human resources policy

14  implemented uniformly from the corporate headquarters.  (*Id.* ¶¶ 26–27.)

15          Plaintiff filed a Declaration to support her allegations and claimed she personally

16  observed "other employees working through lunch," as "all [employees] worked in the

17  same area."  (Doc. 17-6 ¶ 9.)  Her Declaration also states "Defendant told [her] that its

18  policy was to deduct one hour per day automatically from employees' working time each

19  day for a 'lunch break,'" and a human resources representative told her of this lunch-break

20  policy when she began working for Defendant.  (*Id.*)  Contrary to Defendant's assertion

21  that Plaintiff failed to point to any other class member, Plaintiff specifically named Destiny

22  Cyr in her Declaration and stated she was an Hourly-Commission Employee.[2]  (Doc. 17-6

23  ¶ 12.)

24          Plaintiff also filed a Declaration from Cyr, wherein Cyr stated she worked as a

25  Customer Service Representative at Defendant's Tucson Location.[3]  (Doc. 22-1 ¶¶ 1, 5.)

26          [2]Plaintiff also filed notices from two former employees whom indicated they
27  consented to become a part of this lawsuit because they were "hourly employees who
    earned commissions for Defendant" within "the past three years."  (Docs. 16, 23.)
            [3]Destiny Cyr's Declaration was filed on August 17, 2022—19 days after the Motion
28  was filed.  (Doc. 22.)  However, the Court will consider the Declaration because Defendant
    had 26 days to consider it before filing its Response.  (Doc. 24.)

- 6 -

1   Cyr stated she often worked through her lunches without compensation and Defendant

2   failed to include her commissions in the overtime calculations.  (*Id.* ¶¶ 8–13.)  Plaintiff and

3   Cyr both indicated in their Declarations that they knew other employees, including other

4   Customer Service Representatives, Project Managers, Sales Managers, and Account

5   Managers, earned sales-based commissions because Defendant told them as a group that

6   they were eligible for commissions.  (*Id.* ¶¶ 11–12; Doc. 17-6 ¶¶ 11–12.)  Plaintiff and Cyr

7   estimate there are "ten or more hourly employees like [them] who earned a commission in

8   a week in which they worked overtime."  (Docs. 22-1 ¶ 14, 17-6 ¶ 15.)

9          Based on this record, the Court finds Plaintiff has met her lenient burden and shown

10  she is similarly situated to the Hourly-Commission Employees in Tucson.  *See Stanfield*,

11  2022 WL 2967711, at *2.  Although Plaintiff only offered two declarations,[4] they are high

12  quality, as both Plaintiff and Cyr asserted a uniform policy for similarly situated employees

13  at Defendant's Tucson location.  *See Scales*, 356 F. Supp. 3d at 886–88 (certification

14  granted when plaintiff filed a single declaration alleging uniform policy among employees

15  with similar job duties).  Defendant's argument that Plaintiff's Motion should be denied

16  because her claims require individualized inquiries is unavailing. *See Senne v. Kan. City*

17  *Royals Baseball Corp.*, 934 F.3d 918, 947–48 (9th Cir. 2019) (multiple individualized

18  inquiries in collective action is insufficient to defeat certification because this approach

19  unduly focuses on differences between the proposed plaintiffs, rather than the similarities);

20  *see also Johnson v. INTU Corp.*, No. 218CV02361MMDNJK, 2020 WL 977788, at *3 (D.

21  Nev. Feb. 28, 2020) (same).

22                     B.  Phoenix Hourly-Commission Employees

23         Defendant argues Plaintiff's observations are insufficient to certify any class

24  members outside the Tucson location because Plaintiff could not have "observed

25  employees at a location at which she never worked."  (Doc. 24 at 4.)  As stated above,

26  Plaintiff alleged in her FAC Defendant had pay practices that were "similar or the same for

27         [4]Attorney Sanford's Declaration has no evidentiary value for the similarly situated
28  analysis because he "has no personal experience with Defendant's employment practices
    or with the job duties of a[n] [Hourly-Commission employee]."  *Colson*, 687 F. Supp. 2d
    at 929 (citation omitted).

1    all Hourly-Commission Employees" and these pay practices were the same at all of

2    Defendant's facilities because the policy was a centralized human resources policy

3    implemented uniformly from the corporate headquarters.   (*Id.* ¶¶ 26–27.)   In her

4    Declaration, Plaintiff said she worked at Defendant's Tucson location but she "also worked

5    with Project Managers and other employees at Defendant's Phoenix location" and "made

6    day trips to work at the Phoenix location" on two separate occasions.  (Doc. 17-6 ¶ 5.)

7    According to Plaintiff, some of those employees were eligible for commissions, and she

8    believes that "[b]ased on the number of commission-eligible employees who worked with

9    [her] at the Phoenix location and the number of other locations [she] believe[s] Defendant

10   has, [she] estimate[s] that there are ten or more hourly employees like [her] who earned a

11   commission in a week in which they worked overtime."   (Doc. 17-6 ¶ 15.)

12         With respect to the Phoenix location, Cyr's Declaration is unhelpful because she

13   only states she worked at the Tucson location and does not reference the Phoenix location

14   whatsoever.  (Doc. 22-1.)  Although Plaintiff would have a stronger claim if she included

15   a declaration from a Phoenix employee or referenced a Phoenix employee by name, the

16   Court concludes she still met her lenient burden of showing she is similarly situated to the

17   Hourly-Commission Employees in Phoenix.   Plaintiff alleged Defendant's corporate

18   headquarters had a uniform pay practice across Phoenix and Tucson locations based on "a

19   centralized human resources policy" and that she worked with Hourly-Commission

20   Employees, including other Project Managers, in Phoenix on two occasions.  *See Scales*,

21   356 F. Supp. 3d at 886 (single declaration sufficient where, among other things, plaintiff

22   alleged uniform policy based on observations of other workers performing similar tasks.)

23         **V. 90-day Opt-In Period**

24         In this district, the standard opt-in period for collective actions is 60 days.  *Stanfield*,

25   2022 WL 2967711, at \*5; *see also Barrera*, 2013 WL 4654567, at \*9.  Plaintiff claims a

26   90-day period will allow reasonable time to manage returned mail because many potential

27   collective plaintiffs have different addresses and phone numbers from Defendant's records

28   and further argues this period promotes the remedial goals of the FLSA.  (Docs. 18 at 14;

25 at 9.)  Defendant claims this long period is unjustified because "[t]his case only pertains to a certain group of employees at two particular local businesses, all of whom will no doubt receive the notice quickly via physical or electronic mail."  (Doc. 24 at 10.)  The Court agrees and concludes a 60-day opt-in period is sufficient for Plaintiff to provide notice.  Because Defendant has no other objections to Plaintiff's proposed notice, the Court will otherwise adopt the proposed order.  (*See* Doc 17-7.)

The Court will issue separate order setting a Scheduling Conference pursuant to Federal Rule of Civil Procedure 16.

**IT IS ORDERED**:

(1) Plaintiff's Motion for Conditional Certification (Doc. 17) is GRANTED in part and DENIED in part.

(2) A collective class of potential plaintiffs is conditionally certified under 29 U.S.C. § 216(b) and shall consist of: "All hourly employees [employed by The Countertop Factory Southwest, LLC] who were paid any commissions since May 23, 2019, who made sales during the weeks in which they worked more than 40 hours."

(3) Plaintiff's Notice and Consent forms (Docs. 17-1, 17-2, 17-3, 17-4) shall be written and sent in compliance with the directives in this Order.

(4) Defendant shall produce the requested contact information of each collective member in an electronically importable and malleable electronic format, such as Excel, within seven (7) days after the date of this Order.

(5) The following deadlines apply:

| DEADLINE | DESCRIPTION OF DEADLINE |
|---|---|
| **7 Days After Order Approving Notice** | Defendant to produce the names, last known addresses and e-mail addresses of the collective members in a usable electronic format. |
| **14 Days After Order Approving Notice** | Plaintiff's Counsel to send by U.S. Mail and email message a copy of the Court-approved Notice and Consent Form to the collective members. |

| DEADLINE | DESCRIPTION OF DEADLINE |
|---|---|
| **60 Days After Mailing of Notice** | The collective members shall have 60 days to return their signed Consent forms for filing with the Court. |
| **30 Days After Mailing of Notice** | Plaintiff's Counsel is authorized to send a follow-up email or Postcard to those collective members who did not respond to the initial notice. |

Dated this 7th day of December, 2022.

Honorable Scott H. Rash
United States District Judge

- 10 -