## COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Collective Action Settlement Agreement resolves the matter captioned *Josephine Havey v. The Countertop Factory Southwest, LLC,* **Case No. 4:22-cv-00242-SHR, U.S. District Court for the District of Arizona,** and is entered into between Josephine Havey ("Named Plaintiff"), Eddie Butierez III ("Butierez"), Destiny Cyr ("Cyr"), and Gabriel Guerra ("Guerra") (together with Named Plaintiff, the "Plaintiffs"), on the one hand, and Defendant The Countertop Factory Southwest, LLC ("Defendant") on the other hand.

## FACTUAL BACKGROUND AND RECITALS

1. Named Plaintiff filed her Complaint in the United States District Court for the District of Arizona on May 23, 2022, asserting individual and collective claims for unpaid wages allegedly owed to her and other similarly situated hourly employees under the Fair Labor Standards Act. (Doc. 1).

2. Defendant filed its Answers and Defenses to Named Plaintiff's Complaint on July 21, 2022, denying liability and asserting several affirmative defenses (Doc. 13).

3. On July 28, 2022, Named Plaintiff filed her First Amended and Substituted Complaint, reasserting substantially the same claims and adding allegations that employees were required to perform off-the-clock work. (Doc. 14).

4. Defendant filed its Answers to Named Plaintiff's First Amended and Substituted Complaint denying liability and asserting several affirmative defenses on August 11, 2022. (Doc. 19).

5. On December 8, 2022, the Court granted Named Plaintiff's Motion for Conditional Certification, allowing notice to be sent to current and former employees of Defendant in the conditional class. (Doc. 31).

6. Employees Destiny Cyr, Gabriel Guerra and Eddie Butierez III filed their respective Consents to Join the Action.  (Doc. 5, 16, 23).

7. Throughout this litigation, the Parties exchanged substantial information and data necessary to fully and fairly evaluate the claims asserted in the Action.

8. Plaintiffs and their counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Action. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the Settlement Collective, Plaintiffs and their counsel believe that the settlement as provided in this Agreement is in the best interests of the Settlement Collective and represents a fair, reasonable, and adequate resolution of the claims in the Action.

9. Defendant denied and continues to deny all of Plaintiffs' allegations in the Action. Defendant enters into this Agreement expressly disavowing any fault, liability, and/or wrongdoing. This Agreement is in compromise of disputed claims between and among the Parties.  Nothing in this Agreement shall be construed as an admission by Defendant, or by any of Defendant's current or former employees or agents, of a breach of any duty, obligation, or contract, a violation of any right of Plaintiffs or of any other person, or a violation of any federal, state, or local statute, regulation, judicial doctrine, or other law.  Defendant specifically disclaims any liability to, any breach of any duty or obligation to, or any unlawful action against Plaintiffs or any other person. Defendant also specifically denies any violations of any statute, regulation, judicial doctrine, or other law as alleged in the Action or otherwise.

10. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden, expense, inconvenience, and uncertainty of continuing litigation.

**TERMS OF THE AGREEMENT**

In consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Definitions.** The following terms have the following meanings:

    **"Action"** means the above-captioned collective and class action lawsuit.

    **"Agreement"** means this Collective Action Settlement Agreement.

    **"Court"** means the United States District Court for the District of Arizona.

    **"Defendant"** means Defendant The Countertop Factory Southwest, LLC.

    **"Defense Counsel"** means Bryan Cave Leighton Paisner LLP.

    **"Effective Date"** means the date the Court approves the Settlement and dismisses this Action. This Settlement shall be deemed final and effective immediately upon the Court's entry of an Order dismissing the Action.

    **"Gross Settlement Amount"** means the amount of $12,500.00. This amount will cover the settlement allocations to Plaintiffs and attorneys' fees and costs, such that Defendant's settlement liability shall not exceed the sum of $12,500.00 except for Defendant's share of the required payroll taxes. Defendant shall pay its employer's share of the required payroll taxes in addition to the $12,500.00 amount.

    **"Named Plaintiff"** means Josephine Havey.

    **"Net Settlement Amount"** means $5,750.00, the amount of the Gross Settlement Amount payable to Plaintiffs.

    **"Parties"** refers jointly to Plaintiffs and Defendants.

**"Plaintiffs"** means Named Plaintiff and the following individuals who filed timely consents to join the Action and who have been responsive to and reachable by Plaintiffs' counsel: Destiny Cyr, Gabriel Guerra and Eddie Butierez III.

**"Plaintiffs' Counsel"** means Sanford Law Firm.

**"Released Parties"** means Defendant and any past, current, or future parents, subsidiaries, affiliates, predecessors, shareholders, directors, owners, members, agents, employees, successors, administrators, executors, partners, assigns, representatives, or other persons or entities acting on its behalf.

**"Settlement"** means the terms and conditions described in this Agreement.

2. **Settlement Fund and Allocation.**

A. <u>Allocation to Plaintiffs</u>. Plaintiffs will receive a share of the Net Settlement Amount, as follows:

i. $2,500.00 made payable to Josephine Havey, in the form of two checks. One check will be in the amount of $1,250.00 less all applicable legal taxes and withholdings, representing all unpaid wages allegedly due, for which Defendant will issue an IRS Form W-2. The other check will be in the amount of $1,250.00, without withholdings, representing claimed liquidated damages, for which Defendant will issue an IRS Form 1099;

ii. $1,750.00 made payable to Eddie Butierez III, in the form of two checks. One check will be in the amount of $875.00 less all applicable legal taxes and withholdings, representing all unpaid wages allegedly due, for which Defendant will issue an IRS Form W-2. The other check will be in the amount of $875.00, without withholdings,

representing claimed liquidated damages, for which Defendant will issue an IRS Form 1099;

iii. $750.00 made payable to Destiny Cyr, in the form of two checks. One check will be in the amount of $375.00 less all applicable legal taxes and withholdings, representing all unpaid wages allegedly due, for which Defendant will issue an IRS Form W-2. The other check will be in the amount of $375.00, without withholdings, representing claimed liquidated damages, for which Defendant will issue an IRS Form 1099;

iv. $750.00 made payable to Gabriel Guerra, in the form of two checks. One check will be in the amount of $375.00 less all applicable legal taxes and withholdings, representing all unpaid wages allegedly due, for which Defendant will issue an IRS Form W-2. The other check will be in the amount of $375.00, without withholdings, representing claimed liquidated damages, for which Defendant will issue an IRS Form 1099

B. <u>Attorneys' Fees and Expenses</u>.  Plaintiff's Counsel will seek (and Defendant will not oppose) Court approval of attorneys' fees and costs in the amount of $6,750.00. The Settlement is ***not*** contingent upon the Court's approval of this amount.  Defendant will issue a Form 1099 to Plaintiffs reflecting an equal share of these attorneys' fees and costs.

3. **<u>Maximum Gross Settlement Amount</u>.**  Defendants' total payment under this Settlement will not under any circumstances exceed $12,500.00, exclusive only of Defendants' portion of FICA/Medicare wage withholdings on the portion of the Net Settlement Amount from which withholdings are made.

4. **<u>Condition Precedent</u>.**  This Settlement is conditioned on the passage of the Effective Date.

5. **Named Plaintiff's Release.** As of the Effective Date, Named Plaintiff (on behalf of herself and her heirs, spouses, administrators, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims for unpaid wages, underpayment of wages, unpaid overtime, underpayment of overtime, unpaid meal or rest premiums; unpaid bonuses or underpayment of bonuses on account of not having paid overtime allegedly due; claims for additional bonus eligibility or amounts due to the wages paid with this Settlement; or any claims of violations arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*; the Arizona Minimum Wage Act (Ariz. Rev. Stat. §§ 23-262 *et seq.*), the Arizona Equal Pay Act (Ariz. Rev. Stat. Ann. §§ 23-340 *et seq.*), or any other federal, state, or local, or other constitutional provisions, statutes, ordinances, common laws, or other laws, relating to pay, compensation, or remuneration arising from December 9, 2019 through the date the Court finally approves the Settlement herein, either asserted in or reasonably related to the Action.

In addition, Named Plaintiff waives, releases, and forever discharges the Released Parties from any and all rights, causes of action, claims or demands, whether express or implied, known or unknown, that arise on or before the date that Plaintiff executes this Agreement, which Plaintiff has or may have against the Released Parties, including, but not limited to, those asserted in the Action and any rights, causes of action, claims, or demands relating to or arising out of the following:

(a) anti-discrimination, anti-harassment, and anti-retaliation laws, such as the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, and Executive Order 11141, which prohibit employment discrimination based on age; Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 (42 U.S.C. § 1981), the Equal Pay Act, and Executive Order 11246, which prohibit discrimination based on race, color, national origin, religion, or sex;

the Genetic Information Nondiscrimination Act, which prohibits discrimination on the basis of genetic information; the Americans With Disabilities Act and Sections 503 and 504 of the Rehabilitation Act of 1973, which prohibit discrimination based on disability; and any other federal, state, or local laws prohibiting employment or wage discrimination including the Arizona Civil Rights Act, (Ariz. Rev. Stat. Ann. §§ 41-1401 et seq.); the Arizona Employment Protection Act (Ariz. Rev. Stat. Ann. §§ 23-1501 et seq.);; and

(b) other employment laws, such as the Worker Adjustment and Retraining Notification Act, which requires that advance notice be given of certain workforce reductions; the Employee Retirement Income Security Act of 1974, which, among other things, protects employee benefits; the Family and Medical Leave Act, which requires employers to provide leaves of absence under certain circumstances; state laws which regulate wage and hour matters, including all forms of compensation, vacation pay, sick pay, compensatory time, overtime, commissions, bonuses, and meal and break periods; state family, medical, and military leave laws, which require employers to provide leaves of absence under certain circumstances; the Sarbanes Oxley Act; and any other federal, state, or local laws relating to employment; and

(c) tort, contract, and quasi-contract claims, such as claims for wrongful discharge, physical or personal injury, intentional or negligent infliction of emotional distress, fraud, fraud in the inducement, negligent misrepresentation, defamation, invasion of privacy, interference with contract or with prospective economic advantage, breach of express or implied contract, unjust enrichment, promissory estoppel, breach of covenants of good faith and fair dealing, negligent hiring, negligent supervision, negligent retention, and similar or related claims; and

(d) all remedies of any type, including, but not limited to, damages and injunctive relief, in any action that may be brought on Plaintiff's behalf against the Released Parties by any government agency or other entity or person.

Excluded Claims.  Notwithstanding anything to the contrary in this Agreement, the waiver and release contained in this Agreement shall exclude any rights or claims that (a) may arise after the date on which Plaintiff executes this Agreement; or (b) cannot be released under applicable law (such as workers' compensation and unemployment insurance claims).

6. **Release of Claims by Butierez, Cyr, and Guerra.**  For valuable consideration from the Company, receipt of which is hereby acknowledged, Butierez, Cyr, and Guerra waive, release, and forever discharge the Released Parties from any rights, causes of action, claims, or demands which Employee has or may have against the Defendant and/or the Released Parties for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties, premium pay, interest, restitution or other compensation and relief relating to or arising out of alleged failure to properly pay for wages due, including claims under the following: the Fair Labor Standards Act (the "FLSA"), which requires employers to pay non-exempt employees overtime premium pay under certain circumstances, and minimum wage; state and local laws which regulate wage and hour matters, including all forms of compensation, vacation pay, sick pay, compensatory time, overtime, commissions, bonuses, and meal and break periods, including the Arizona Minimum Wage Act (Ariz. Rev. Stat. §§ 23-262 *et seq.*), the Arizona Equal Pay Act (Ariz. Rev. Stat. Ann. §§ 23-340 *et seq.*); any contract, quasi-contract, or other tort or common law claims related to payment of wages; and any other federal, state, or local laws relating to wages, payments, salary, bonuses, commissions, and any and all other remuneration.

7. Butierez, Cyr, and Guerra understand that they are releasing claims about which

they may not know anything at the time they execute this Agreement. Butierez, Cyr, and Guerra acknowledge that it is their intent to release such unknown claims, even though they recognize that someday they might learn new facts relating to wages, payments, salary, bonuses, commissions, and any and all other remuneration, or learn that some or all of the facts they currently believe to be true are untrue, and even though they might then regret having signed this Agreement. Nevertheless, Butierez, Cyr, and Guerra acknowledge their awareness of that risk and agree that this Agreement shall remain effective in all respects in any such case.

Excluded Claims. Notwithstanding anything to the contrary in this Agreement, the waiver and release contained in this Agreement shall exclude any rights or claims that (a) may arise after the date on which Butierez, Cyr, and Guerra execute this Agreement; or (b) cannot be released under applicable law (such as workers' compensation and unemployment insurance claims).

8. **Approval Motion.** As soon as practicable after the execution of this Agreement, the Parties will file with the Court a motion seeking, *inter alia*, entry of an order approving the Settlement.

9. **Settlement Administration.**

A. Distribution of Settlement Checks. Within twenty-one (21) business days following the later of (1) Defendant's receipt of a copy of this Agreement signed by Plaintiffs and the expiration of the seven (7)-day revocation period (if applicable); (2) Defendant's receipt of notice of dismissal of the Action; or (3) Defendant's receipt of completed W-4 and W-9 forms from Plaintiff's counsel and each Plaintiff, Defendant shall deliver each check payable under this Agreement to the Sanford Law Firm at 10800 Financial Centre Parkway, Suite 510, Little Rock, Arkansas .

B. **Tax Treatment of Payments to Plaintiffs.** For individual settlement allocations as set forth in Paragraph 2(A) above, fifty percent (50%) of the amount(s) paid to each Plaintiff under this Agreement shall be reported by Defendant as wages to the appropriate taxing authorities on a Form W-2 issued to the Plaintiff with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to each Plaintiff will be allocated to liquidated damages, interest, and/or penalties, and reported by Defendant as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the Plaintiff. Defendant will be responsible for issuing the appropriate W-2 and 1099 forms and for ensuring payment to the appropriate federal and state taxing authorities in the amount required to cover Defendant's portion of FICA/Medicare taxes for each Plaintiff. Each Plaintiff shall be responsible for any taxes associated with the Form 1099 payment.

10. **Cooperation Clause.** The Parties agree to cooperate in good faith to effectuate the Settlement of the Action, including securing the Court's approval of the Agreement/dismissal of the Action, assisting with the administration of the Settlement in accordance with the terms of this Agreement, and providing all necessary tax forms to effectuate the Settlement.

11. **Court Retains Jurisdiction to Enforce Agreement.** The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

12. **Entire Agreement.** This Agreement embodies the entire agreement between the Parties, which controls over any prior communications regarding the Settlement. In entering into

the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

13. **Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs and successors.

14. **No Admissions.** Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendant denies any wrongdoing and continues to assert that, absent this Settlement, it ultimately would prevail in the Action.

15. **Court Approval Not Obtained.** If the Court does not approve the Settlement, the Parties' litigation positions will return to the *status quo ante*, and Defendant will not have waived, compromised, or impacted any objections or defenses to Plaintiff's claims or the propriety of class-wide or collective litigation.

16. **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

17. **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

18. **Confidentiality.** Plaintiffs agree that they and their attorneys will keep confidential, and not make public in any way, the terms of this Agreement unless required to disclose the same by court order. If required by court order to disclose the terms of the Agreement, Plaintiffs and their attorneys agree that they will provide at least ten (10) days advance written notice of such proposed disclosure to Defendant's attorney, R. Nelson Williams, Bryan Cave LLP, One Metropolitan Square, 211 N. Broadway, Suite 3600, St. Louis, Missouri 63102, Telephone: (314) 259-2000, Facsimile: (314) 259-2020. Plaintiffs further agree that nothing herein shall be

construed to prevent them from disclosing the terms of the Agreement to their spouses (if any), attorneys, accountants, or tax preparers, who shall be advised of and who shall be held to the same standard of confidentiality as Plaintiffs. If Plaintiffs, their spouses, or any of their attorneys, representatives, or agents are asked about the Action or its disposition, they shall state only that "the matter has been resolved to my [the Plaintiff's] satisfaction," or words to that effect, and shall not disclose any other information about the Action or the settlement thereof, including the amount of any settlement proceeds or the method of calculating same.

19. **Waiver of Future Employment With the Company.** Plaintiffs agree not to apply for employment, or seek reinstatement, with Defendant, and further agree that the Defendant has no obligation to hire or rehire Plaintiffs at any time in the future. Plaintiffs forever release, waive, and relinquish any right or claim to be hired by, or to reinstatement with, Defendant. Plaintiffs agree that this Agreement is a lawful, non-discriminatory, and non-retaliatory basis upon which Defendant may refuse to hire or rehire Employee.

20. **Evidentiary Privilege.** This Agreement and all associated negotiations are covered by Federal Rule of Evidence 408.

21. **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approved by the Court.

21. **Knowing and Voluntary**. The Parties agree that they have entered into this Agreement knowingly and voluntarily, and that they have read and understand the contents of this Agreement.

22. **Consultation with Legal Counsel.** By executing this Agreement, the Plaintiffs acknowledge that, at the time they were presented with this Agreement for consideration, Plaintiffs were advised by Defendant, in writing, to consult with an attorney about this Agreement, its

meaning and effect, and the claims Plaintiffs are releasing prior to executing this Agreement, and that Plaintiffs did, indeed, consult with Sanford Law Firm regarding this Agreement, the impact of Plaintiffs signing this Agreement, and the claims Plaintiffs are releasing as a result of signing this Agreement, before executing the Agreement.

23.     **Execution.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by facsimile transmission or other electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties transmitted by facsimile or other electronic means will be deemed to be their original signatures for any purpose whatsoever.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

**PLAINTIFFS**

Date: 04 / 17 / 2024    By: *[signature]*
Printed Name:  Josephine Havey

Date: _____    By: _____
Printed Name:  Eddie Butierez III

Date: _____    By: _____
Printed Name:  Destiny Cyr

Date: _____    By: _____
Printed Name:  Gabriel Guerra

**ON BEHALF OF DEFENDANT THE COUNTERTOP FACTORY SOUTHWEST, LLC**

Date: _____    By: _____

Printed Name: _____

Title: _____

Page **14** of 15

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

**PLAINTIFFS**

Date: _____   By: _____
Printed Name:  Josephine Havey

Date: 04 / 20 / 2024   By: *Eddie Butz* (signature)
Printed Name:  Eddie Butierez III

Date: _____   By: _____
Printed Name:  Destiny Cyr

Date: _____   By: _____
Printed Name:  Gabriel Guerra

**ON BEHALF OF DEFENDANT THE COUNTERTOP FACTORY SOUTHWEST, LLC**

Date: _____   By: _____

Printed Name: _____

Title: _____

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

**PLAINTIFFS**

Date: _____　　By: _____
　　　　　　　　　　　　　　　Printed Name:  Josephine Havey

Date: _____　　By: _____
　　　　　　　　　　　　　　　Printed Name:  Eddie Butierez III

Date:  04/23/2024　　　　　　By: *Destiny Cyr*
　　　　　　　　　　　　　　　Printed Name:  Destiny Cyr

Date: _____　　By: _____
　　　　　　　　　　　　　　　Printed Name:  Gabriel Guerra

**ON BEHALF OF DEFENDANT THE COUNTERTOP FACTORY SOUTHWEST, LLC**

Date: _____　　By: _____

　　　　　　　　　　　　　　　Printed Name: _____

　　　　　　　　　　　　　　　Title: _____

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

**PLAINTIFFS**

Date: _____  By: _____
                        Printed Name: Josephine Havey

Date: _____  By: _____
                        Printed Name: Eddie Butierez III

Date: _____  By: _____
                        Printed Name: Destiny Cyr

Date: 04 / 17 / 2024   By: _____
                        Printed Name: Gabriel Guerra

**ON BEHALF OF DEFENDANT THE COUNTERTOP FACTORY SOUTHWEST, LLC**

Date: 5/13/2024        By: _____
                        Printed Name: William Heuse
                        Title: OWNER

Reviewed and approved as to form by counsel:

**SANFORD LAW FIRM**

Date: 4/23/24

By: _____

Printed Name: Sean Short

Attorney for Plaintiffs

**BRYAN CAVE LEIGHTON PAISNER LLP**

Date: 5/24/24

By: _____

Printed Name: Roy Nelson Williams

Attorney for Defendant